UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HASHEM W. HARRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 3:12-CV-251-JD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION & ORDER

On April 14, 2008, Claimant Hashem Harrell applied for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"),[2] alleging a disability onset date of July 1, 2006 [R 174-184]. He claimed he was disabled due to symptoms associated with chronic back pain, a bulging disc, and a crack in his spine [R 95]. On July 15, 2008, Harrell's initial applications were denied [R 92], and on November 19, 2008, his request for reconsideration was denied [R 103]. On January 6, 2009, Harrell requested a hearing before an Administrative Law Judge ("ALJ") [R 117].

The hearing was held on July 16, 2010 in South Bend, Indiana [R 39]. Harrell, his wife, and a Vocational Expert ("VE") testified, with Harrell's attorney in attendance [R 41; R 76; R 78]. The

---

[1] Carolyn W. Colvin became the acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the Defendant in this action. No further action needs to be taken as a result of this substitution. 42 U.S.C. § 405(g) ("[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 401.1501 *et. seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et. seq.* Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

1

ALJ found Harrell was not disabled under the Social Security Act, concluding that he had the residual functional capacity ("RFC")[3] to perform jobs that exist in significant numbers in the national economy [R 22-30]. On March 30, 2012, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, at which point the ALJ's decision became the final decision of the Commissioner [DE 1].

On May 18, 2012, Harrell filed his complaint in this Court pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), alleging that the ALJ's decision was in error [DE 1]. On September 6, 2012 the Commissioner filed his answer to the plaintiff's complaint [DE 4]. On October 12, 2012, Harrell filed his opening brief [DE 14]. On December 26, 2012, the Commissioner filed his response [DE 17]. On January 7, 2013, Harrell filed his reply [DE 18]. For the reasons that follow, the Court finds a remand is necessary because the ALJ's findings relative to Harrell's RFC and credibility were not clearly articulated by the ALJ and not sufficiently substantiated with evidence in the record. Moreover, the ALJ's discussion of the weight afforded the treating physicians' opinions was insufficient.

## I. BACKGROUND[4]

Hashem Harrell was born on September 3, 1976 and was 29 years old at the alleged onset date of his disability, July 1, 2006 [R 174]. Harrell is currently 36 years old and suffers from chronic back pain, a bulging disc, a crack in his spine, pars defects, spina bifida, spondylolisthesis status post fusion, and hydradenitis suppurativa [R 24; R 196]. Harrell completed the 10th grade and

---

[3] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545(a)(1).

[4] This section is a simple summary of the facts of the case; it is not meant to be exhaustive, particularly where the record spans over 700 pages. Material facts and medical evidence are explored in more detail during the Court's discussion of the issues.

has since then held various jobs, including car sales, retail sales, manufacturing, construction, roofing, general labor and cleaning jobs [R 28]. Harrell has not performed substantial gainful activity ("SGA") since his alleged onset date of July 1, 2006, and he remained insured for the purposes of DIB through December 31, 2011 [R 24].

**A.     Medical Health History**

In November of 2005, Harrell saw Dr. Park of the South Bend Pain Clinic after his constant back pain stopped responding to over the counter pain relievers such as advil, aleve, aspirin, and tylenol, and was prescribed vicodin and celebrex [R 320-322]. In May 2006, Harrell was diagnosed by Dr. Spence with lumbar spondylolthesis at L5-S1, lumbar spinal stenosis with right lumbar radiculopathy [R 310]. He was prescribed vicodin, celebrex, and medrol dosepak, along with physical therapy. *Id*. Beginning in November of 2006, Harrell began taking trigger point injections with Dr. Spence into his lower back to alleviate the pain [R 284, R 288; R. 292; R 296; R 300; R 330]. During this time Harrell was self employed, running his own car dealership, which failed in October of 2007 [R 49-50]. The business failed in part due to Harrell's self reported inability to work because of his chronic back pain [R 47]. From this point forward, Harrell continued to be unemployed, and in early 2008, he applied for DIB and SSI benefits [R 22].

In June of 2008, Dr. Sices, of the Indiana Department of Family and Social Services Disability Determination Bureau, conducted a medical consultation and found Harrell suffered from chronic back pain with sciatica affecting the right leg [R 333-334]. Furthermore, Dr. Sices noted no impairments to Harrell's gait but a limited range of motion related to his hips, lumbar spine, and right ankle. *Id*. In July of 2008, medical consultant Dr. Dobson examined Harrell to determine his RFC [R 337-344]. Dr. Dobson found Harrell had chronic low back pain with sciatica affecting the

3

right leg and noted that Harrell did not use an assistive device to walk, and walked with normal gait, speed, and stability [R 338]. Dr. Dobson noted Harrell's decreased range of motion in his hips, lumbar spine, and right ankle. *Id*. Dr. Dobson believed Harrell could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for 6 hours in a workday, sit for 6 hours in a work day, and suffered lower extremity limitations with his ability to push/pull. *Id*. Further, Dr. Dobson opined Harrell could frequently balance, kneel, and crawl, occasionally climb, stoop, and crouch, but never balance. *Id*. Harrell had no manipulative limitations, visual, communicative, or environmental limitations, except he needed to avoid hazards. *Id*.

Harrell continued to see Dr. Park and Dr. Kazi for his chronic back pain into 2009 [R 346; R 640]. He was continually prescribed numerous narcotics to manage his lower back pain [R 346; R 372; R 589]. However, with the pain worsening and not responding to the narcotics, Harrell was referred by Dr. Kazi to Dr. Smith for a L5-S1 posterolateral lumbar interbody fusion which was performed on November 18, 2009. Harrell was discharged from the hospital on November 21, 2009 with the following diagnosis: lumbar L5-S1 bilateral pars defects, spondylolisthesis, and spina bifida occulta [R 368].

After surgery, Harrell claims he attempted physical therapy with DPT O'Donnell, but had to miss numerous sessions due in part to pain caused by his skin condition known as hydradenitis suppurativa [R 56-57]. While Harrell's pain was temporarily alleviated following surgery and physical therapy, the lower back pain returned within a few months, and in February 2010 he was prescribed oxycontin, percocet, and neurontin by Dr. Kazi [R 615]. During this time, Harrell was using a cane for ambulation [R 67]. Six months after the surgery, Dr. Smith found Harrell ambulated with a cane at an odd posture and noted that interbody fusion may be happening [R 386]. Following

surgery Harrell continued to see both Dr. Smith and Dr. Kazi and was continuously prescribed narcotic pain medicines [R 636]. Harrell's condition continued to worsen, and Harrell self-reported increased back pain that radiated to his legs and severely impacted his daily life [R 640].

On August 21, 2010, Harrell was re-evaluated by Dr. Saquib who found Harrell suffered from low back pain, spina bifida, and lower extremity muscle weakness [R 695]. Dr. Saquib found Harrell could sit for 2 hours, stand for 45 minutes, and walk for 20-30 minutes in an 8 hour work day [R 698-702]. Dr. Saquib believed Harrell could occasionally lift up to 20 pounds, but could not carry any amount of weight. *Id*. He further opined that Harrell could essentially perform no physical activity due to back pain, except occasionally operating a motor vehicle short distances and preparing simple meals. *Id*. Dr. Saquib noted that Harrell used a scooter for grocery shopping, and ambulated with a cane which was medically necessary. *Id*.

Harrell continues to suffer from hydradenitis suppurativa for which he is being treated by Dr. Bressik [R 57]. While Harrell was not formally diagnosed with the condition until 2010, the record supports the diagnosis in 1996, 2000 [R 654], 2004 [R 684], and 2008 [R 682]. Harrell also reports feeling depressed and anxious because of his chronic low back pain [R 62]. He was placed on the antidepressants cymbalta and effexor XR in 2007, but he did not think the medicine helped so he discontinued its use [R 62]. On August 13, 2010, a psychological evaluation was completed by Carol Singler, P.h.D., who found Harrell did not meet the DSM-IV criteria for a psychiatric diagnosis and indicated his global assessment of functioning was 62 [R 688-689]. Harrell continues to be treated by Dr. Kazi for chronic back pain and is currently taking percocet, oxycontin, and neurontin [R 53].

Dr. Kazi opined in a letter dated November 2010 that Harrell will "remain in pain and he will not be able to maintain any employment involving prolonged standing, sitting, walking, bending, twisting and lifting anything more than 30 lbs." [R 10]. Again in February of 2012, Dr. Kazi wrote another letter explaining he believes Harrell's progress has "hit a plateau" and he does not "expect much further improvement" to Harrell's overall condition [R 11].[5]

**B.      Administrative Hearing and ALJ's Decision**

On December 30, 2008, Harrell requested, through his attorney Mr. Sanford, to be heard by an administrative law judge [R 117]. Harrell was afforded his request on July 16, 2010, when ALJ Jennifer Fisher heard the case in South Bend, Indiana. At the administrative hearing, the ALJ took an opening statement from Attorney Sanford, and questioned Harrell extensively concerning his medical impairments and their effect on his daily activities [R 46-74]. Harrell recounted his difficulties standing, walking, sitting, sleeping, taking care of his personal hygiene, and paying attention [R 70-75]. Harrell testified that he has been using a cane for ambulation before and after his back surgery in November of 2009, with it being prescribed after his surgery [R 67-68]. The cane is used "all the time" by Harrell for both balance and weight support. *Id*. Harrell's wife, Waneta, affirmed her husband's testimony as true, and elaborated on his difficulties sleeping, but noting that he is able to take his own medication [R 76].

After concluding her questioning of Harrell and his wife, the ALJ introduced the VE who testified by phone. The ALJ then asked the VE a series of hypothetical questions. First, the ALJ posited a hypothetical individual of Harrell's age, education, and past work experiences who could

---

[5]To the extent the Commissioner argues Dr. Kazi's letters should not be considered by this Court because Harrell is not seeking a remand based on new evidence [DE 17 at 5, fn. 2], the Court would note that even absent consideration of this evidence its decision would remain the same in this matter.

lift 10 pounds occasionally, and negligible weight frequently; could stand or walk for a total of 2 hours in an 8 hour work day; could sit for 6 hours in an 8 hour work day; but would need to alternate between sitting and standing without taking him off task; and could occasionally operate foot controls, climb ramps, and balance but never climb ladders, ropes, scaffolds, stairs, stoop, kneel, crouch, or crawl [79-80]. This hypothetical individual would need a cane for standing/walking and would need to avoid moving machinery, extreme heat/humidity, unprotected heights, slippery and uneven surfaces, and routine repetitive tasks with pace limited to goal oriented standards [R 80-81]. Occasional interactions with co-workers and the general public could be tolerated, but there could be no cooperative tasks or responsibility for addressing complaints or other concerns. *Id*. Based on this hypothetical, the VE determined only employment at the sedentary exertional level would be possible, but the need to stand and balance with the cane would limit the use of one hand and not allow for the individual to perform any work adequately [R 81-82]. The second hypothetical posed an individual who could lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 4 hours, and sit for 6 hours with the need to alternate between the sit and stand position, and would have limitations consistent with the first hypothetical individual [R 82-83]. With this hypothetical the VE found the individual could perform as a photocopying machine operator, a counter clerk, and a weigher of shipping and receiving—all unskilled, light exertional tasks [R 83]. The ALJ then added the need for unscheduled breaks or the ability to be inattentive to duties resulting in being off task more than 20 percent of the workday [R 84]. The VE found this hypothetical individual would not be able to sustain competitive employment. *Id*.

On January 12, 2011, ALJ Fisher issued an unfavorable opinion for Harrell [R 22-30]. The ALJ found that Harrell met the insured status requirements of the Social Security Act through

7

December 31, 2011 and found that Harrell had not engaged in SGA since July 1, 2006, the alleged onset date [R 24]. The ALJ concluded that Harrell had the severe impairments of hydradenitis suppurativa, pars defects, spina bifida, and spondylolisthesis status post fusion. *Id*. The ALJ noted that Harrell alleged he suffered from depression, but found no evidence that depression seriously interfered with Harrell's life, as supported by an August 2010 psychological consult [R 24-25]. Despite these impairments, the ALJ concluded that Harrell did not have an impairment or combination of impairments that met or medically equaled any of those included in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ found Harrell's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. *Id*. The ALJ concluded that Harrell had the RFC to perform work at the light exertional level, as defined in 20 C.F.R. §§ 404.1529 and 416.929, except that he could only lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours in an 8 hour work day; sit for 6 hours in an 8 hour work day; periodically alternate between sitting and standing while remaining on task; and could occasionally operate foot controls, climb ramps, and balance, but could never stoop, kneel, crouch, crawl, climb ladders, ropes, scaffolds, or stairs, nor tolerate exposure to extreme heat or humidity, moving machinery, unprotected heights, or slippery/uneven surfaces; but can sustain a goal oriented pace [R 25]. Given the RFC determination, the ALJ concluded Harrell could not perform past work, but could perform jobs that existed in significant numbers in the national economy including photocopy machine operator, counter clerk, and weigher in the shipping/receiving field, and that he was, therefore, not disabled. *Id*.

## II. STANDARD OF REVIEW

The Commissioner's final decision in this case is subject to review pursuant to 42 U.S.C. § 405(g), as amended, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399-400. As a result, the court "may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Conclusions of law, unlike conclusions of fact, are not entitled to deference. If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The five step process asks:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). If the claimant is performing substantial gainful activity (step one) the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant does not have a severe medically determinable impairment or a combination of impairments that is severe and meets the duration requirement (step two), then the claimant will likewise be found not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant is not performing SGA and does have a medically severe impairment, however, the process proceeds to step three. At

step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). In the alternative, if a listing is not met or equaled, then in between steps three and four the ALJ must assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work (step four) and whether the claimant can perform other work in society (step five). 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

This case must be remanded because the ALJ failed to cite to sufficient evidence supporting her conclusion concerning Harrell's RFC and credibility. Moreover, on remand, the ALJ should adequately explain the weight afforded the opinions of Harrell's treating physicians and the ALJ must identify the evidence relied on to support her determination. In short, the arbitrary assessment provided is not supported by substantial evidence.

The ALJ must determine the claimant's RFC before performing steps four or five. *Young v. Barnhart*, 362 F.3d at 1000; 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. RFC is an assessment of the work-related activities a claimant is able to perform on a regular and continued basis despite the limitations imposed by an impairment or combination of impairments. *Id*. This finding must be assessed based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a). The ALJ must consider all medically determinable impairments, even if not considered "severe," 20 C.F.R. § 404.1545(a)(2), and the RFC must be supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

The ALJ has final responsibility for deciding a claimant's RFC, which is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1546(c), 404.1527(e). A reviewing court is not to substitute its own opinion for that of the ALJ's or to reweigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability, *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), and he is required to determine which treating and examining doctors opinions should receive weight and must explain the reasons for these findings. 20 C.F.R. § 404.1527(d), (f).

In formulating the RFC, the ALJ failed in many ways to cite appropriate evidence in the record and provide sufficient explanation supporting her conclusions regarding Harrell's limitations. For instance, the ALJ did not bother to identify the evidence that led her to conclude Harrell could stand/walk for 4 hours in an 8 hour work day [R 27]. In fact, medical records contradict this finding. *See e.g.*, Dr. Saquib's August 2010 assessment, finding Harrell could stand for 45 minutes and walk 20-30 minutes in an 8 hour work day [R 698]—a fact completely omitted when the ALJ discussed Dr. Saquib's findings [R 27]. Moreover, Harrell testified that he could only stand for 10-15 minutes.

12

And the ALJ's conclusory notation that she did not find Harrell's testimony credible "to the extent [it is] inconsistent with the above residual functional capacity assessment" without substantiation in the medical record is simply deficient. *See Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (requiring an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding); SSR 96-7p. Thus, the ALJ not only doesn't explain where she derives her 4 hour stand/walk assessment from, but she did not provide specific reasons supporting her credibility finding.

The Court also notes that the ALJ failed to address in Harrell's RFC whether or not a cane was needed. Yet medical records indicate that Harrell's use of a cane is medically necessary and every question posed to the VE included the use of a cane [R 80-84]. Similarly, every hypothetical posed to the VE included limitations relative to Harrell's ability to interact with co-workers and the public, yet this was not addressed in the RFC. On remand, the ALJ should explain her assessment of Harrell's need to use a cane and his limitations regarding social interactions, and the impact of these limitations on his RFC.

And as pointed out by Harrell's counsel [DE 35-37], the ALJ should also clarify Harrell's ability to remain on task in her RFC assessment. The ALJ found that Harrell could remain on task, but she did not indicate what evidence she relied upon for this conclusion [R 25]. The ALJ questioned the VE about the types of jobs available for someone who was off task 20% of the time [R 84]—but then didn't explain why such a limitation wasn't necessary despite Harrell's testimony that his pain interferes with his ability to concentrate. On remand the ALJ should explain whether or not the record supports a task-related limitation in the RFC.

Finally, the ALJ writes, "[t]he claimant's capacities are presently slightly more limited than what was provided for in Dr. Dobson's 2008 opinion[,]" but then the ALJ provides no analysis explaining what Harrell's final capacity is or the basis for the determination [R 27]. This is especially important since Dr. Dobson's assessment was done prior to Harrell's surgery [R 336-344]. In other words, the ALJ may legitimately believe Dr. Dobson's 2008 findings failed to account for all of Harrell's limitations, but the ALJ must explain what those additional limitations are and identify the medical records and opinions supporting her conclusion. While the ALJ does not need to provide a written evaluation of every piece of testimony and evidence in the case, she must provide a logical bridge between the evidence and her conclusions.

As the Court previously mentioned, the ALJ's credibility finding does not pass muster. The Court recognizes that because the ALJ is in the best position to observe witnesses, an ALJ's credibility determination will not be upset on appeal so long as it finds some support in the record and is not patently wrong. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Indeed, "[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). However, as a bottom line, SSR 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support her credibility finding. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003).

Here, the ALJ articulated no reasons for finding that Harrell's testimony lacked credibility. To merely state that his statements aren't credible "to the extent they are inconsistent with the above residual functional capacity assessment" is insufficient—especially where the RFC analysis is

incomplete. Moreover, the ALJ failed to provide any credibility discussion whatsoever of the testimony provided by Harrell's wife who confirmed Harrell's limitations.

SSR 96-7p identifies the various examples of the kind of evidence that the ALJ considers, in addition to objective medical evidence, when assessing the credibility of an individual's statements, and the Court expects the ALJ will consider those on remand and provide specific reasons for the weight given to Harrell and any other witnesses' statements. *See Ware v. Apfel*, No. IP 99-1526-C H/G, 2000 WL 1707942 *5 (S.D. Ind. Nov. 14, 2000) (Hamilton, J.); SSR 96-7p.

Lastly, on remand, the ALJ should provide further discussion of the weight afforded to the opinions and records of Harrell's treating physicians. *See* 20 C.F.R. § 404.1527; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (noting that the factors the ALJ should consider when determining the weight to give the treating physician's opinion include the length of treatment and frequency of examination, whether the physician supported his opinion with sufficient explanations, the extent to which the treating physician presents relevant evidence to support his opinion, whether the physician specializes in the medical conditions at issue, and the consistency of the opinion). For instance, Drs. Park and Spence provided treatment for Harrell, yet there is no mention of the weight afforded their opinions or how their records affected the ALJ's RFC determination. Moreover, Drs. Park and Kazi continuously prescribed numerous narcotic pain medicines, yet the ALJ does not mention the side effect of these medications or their ability to alleviate Harrell's pain so that he may work—an issue which is also important for assessing Harrell's credibility. SSR 96-7p. Lastly, while the ALJ mentioned Dr. Smith's report indicating Harrell's condition improved after his surgery, she neglected to indicate her consideration of the subsequent medical records indicating that Harrell's pain returned and affected his daily life [R 386; 619; 623; 628].

15

Given the fact that the logical bridge is missing in more ways than one, there is not a valid determination in this case of Harrell's credibility and RFC. And without a proper RFC evaluation, steps four and five cannot be properly analyzed. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. In other words, the Court has no way of concluding whether the hypothetical questions posed to the VE ultimately included all of Harrell's limitations because there was an insufficient discussion of the record evidence supporting the ALJ's RFC determination. Moreover, to the extent some of the more restrictive hypos may have included all of the limitations from which Harrell suffers, the VE responded that Harrell would not be able to sustain competitive employment. In essence, given the unsupported RFC determination, it is impossible for the Court to determine whether the questions posed to the VE are adequate and inclusive of all the conditions Harrell alleges he suffers from, and whether the VE's testimony sufficiently establishes whether Harrell could in fact perform his past work or other work.

## IV. CONCLUSION

Because the ALJ failed to substantiate her RFC determination and credibility finding with sufficient explanation based on the evidence in the record, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

SO ORDERED.
ENTERED:   May 31, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court